IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES M. BECK, *

PLAINTIFF *

v. * CIVIL ACTION NO.: RDB-11-3075

SANDRA PEIFFER, *ET AL.*, *

DEFENDANTS. *

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff James M. Beck ("Beck") has filed this lawsuit against Defendants Sandra Peiffer, Patrick Sullivan, and Arbotek Associates, Inc. ("Arbotek"), alleging breach of contract, tortious interference with contract, intentional misrepresentation, and conversion. These allegations relate to the sale of Avtek Associates, Inc. ("Avtek"), a company founded by Beck, to Defendants Peiffer and Sullivan. Briefly, Beck alleges that he, Peiffer, and Sullivan executed a Stock Purchase Agreement supported by a Promissory Note with a schedule of payments. Beck further alleges that Peiffer and Sullivan mismanaged Avtek, breached the contractual agreements, diverted its revenues, and diverted its customers to a joint venture entered into with Defendant Arbotek. In this regard, Beck alleges that Arbotek tortuously induced Peiffer and Sullivan to breach their agreement with Beck and enter into the joint venture. Presently pending is Arbotek's Motion to Dismiss for Failure to State a Claim (ECF No. 16). This Court has reviewed the record, as well as the pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Arbotek's motion to dismiss will be DENIED.

## BACKGROUND & PROCEDURAL HISTORY

In ruling on a motion to dismiss, the factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff. *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

Before instituting this litigation, Plaintiff Beck was the founder and sole shareholder of Avtek Associates, Inc., a "manufacturers' representative for companies serving the technology market." First Am. Compl. ¶ 6 (hereinafter, "FAC"), ECF No. 14. During Beck's tenure at Avtek, the company earned approximately $1,000,000.00 in revenue per year. *Id.* ¶ 22. Defendants Peiffer and Sullivan were senior employees of Avtek. *Id.* On October 29, 2007, Peiffer and Sullivan purchased 100% of the stock of Avtek through Avtek Acquisition, Inc., a company wholly owned by Peiffer and Sullivan. *Id.* ¶ 7; *see also* Stock Purchase Agmt., FAC Ex. 1. In exchange for his stock in Avtek, Beck received a promissory note in the amount of $900,000.00. FAC ¶ 8. Under the terms of the Note, Peiffer and Sullivan (through Avtek Acquisition) were to pay Beck $14,166.68 per month for eighty-four months. The Stock Purchase Agreement, and its ancillary transaction documents, contain various collateral and contractual provisions dictating Peiffer and Sullivan's obligations to pay the Note. *Id.*

For example, several Stock Pledge Agreements were entered into between Beck and Avtek Acquisition whereby Avtek Acquisition pledges 100% of the Avtek stock to Beck in the event payments were not made on the Note or some other default occurred. *Id.* ¶ 9; Stock Pledge Agmts., FAC Exs. 3-5. In addition, the parties entered into a Management

Agreement that caused all of Avtek's revenue to be deposited into a holding account. FAC ¶¶ 10-11; Management Agmt., FAC Ex. 6. Pursuant to the Management Agreement, "[m]onthly revenue for Avtek would first be applied to paying the monthly sum of $14,166.68 on the Note, then towards Avtek's operating expenses, and finally, if there was money left over at the end of the year and the payments on the Note were current, into Avtek's general operating account." Management Agmt. § 3.3. The Management Agreement and related transaction documents include numerous other provisions including, *inter alia*, reporting requirements, a requirement that Peiffer and Sullivan "use commercially reasonable efforts to preserve the business organization, services of employees and good will of [customers of Avtek] and others having business relations with Avtek," and a requirement that Avtek comply with the provisions in the transaction documents.

Until the Note had been satisfied, Peiffer and Sullivan also agreed that they would not: "(i) directly or indirectly compete with Avtek; (ii) encourage any actual or prospective customer of Avtek to discontinue or not do business with Avtek; (iii) divert from Avtek any business or income from any actual or prospective Avtek customer; (iv) refer any prospective customer of Avtek to any person other than Avtek; or (v) offer services to any Avtek customer in any capacity other than on behalf of and in the name of Avtek." FAC ¶ 14; Stock Purchase Agmt. § 9.2.1.

After the stock sale, "payments on the Note quickly became sporadic," and "no payments have been made since May 2, 2011." FAC ¶ 16. Around this time, Beck was informed by Peiffer that she had been in talks with Arbotek about a possible merger between Avtek and Arbotek. *Id.* ¶ 31. Beck quickly "informed Arbotek that any such

arrangement without his permission would be prohibited by the Stock Purchase Agreement and forwarded a copy to Defendant Arbotek." *Id.* "Defendant Arbotek, through statements made by both of its agents Paul Delagrange and David Brummer, told Plaintiff during a teleconference on June 21, 2011 that begun at 6:03 PM EST that they and Defendant Arbotek were not going to work with Defendant Peiffer or Avtek on the [proposed merger] or anything else." *Id.* ¶ 37.

Notwithstanding this assurance, Arbotek is alleged to have "wrongfully and intentionally induced Defendants Peiffer and Sullivan to breach the Stock Purchase Agreement by entering into a joint venture with Arbotek called ReSpin Sales, whereby customers of Avtek would be diverted to ReSpin Sales." *Id.* ¶ 33. According to Beck, this inducement "included accommodations to allow Defendants Peiffer and Sullivan to redirect revenue that should have been coming to Avtek (and thus to Plaintiff through the Avtek Holding Account) into other accounts so as to avoid making payments to Plaintiff." *Id.* Moreover, at the time Arbotek assured Beck that it would not undertake such a joint venture, "Defendants had already entered into the ReSpin Sales transaction or a similar transaction involving Defendant Peiffer and/or Avtek working with Defendant Arbotek." *Id.* ¶ 38. With respect to Defendant Arbotek, the Amended Complaint concludes that:

> Plaintiff reasonably and justifiably relied on Defendants' misrepresentations of material facts in refraining from immediately exercising remedies in the Transaction Documents and suffered damages as a result, including but not limited to the lost payments on the Note, the loss [of] value of the collateral on the Note, and the undermining, delaying and complicating of Plaintiff's attempts to salvage value from that collateral.

*Id.* ¶ 40.

Given this background, on November 17, 2011, Beck moved for a Temporary Restraining Order and Preliminary Injunction against Defendants Peiffer and Sullivan. *See* TRO & PI Mot., ECF No. 5. This Court scheduled a hearing on the motion for November 22, 2011. However, prior to the hearing date, Defendants Peiffer and Sullivan stipulated and agreed to the preliminary injunctive relief requested by Beck, and this Court entered an Order granting Beck's motion. *See* Joint Stip., ECF No. 11; TRO & PI Order, ECF No. 12. After Peiffer and Sullivan answered Beck's original Complaint (ECF No. 13), Beck filed the First Amended Complaint as to which Defendant Arbotek filed the motion to dismiss that is the subject of this Memorandum Opinion. Arbotek argues that, with respect to the counts levied against Arbotek (Counts Two and Three), Beck has failed to state a claim upon which relief may be granted. Specifically, Arbotek argues that Count Two (tortious interference with contract), fails to allege facts that support the conclusion that Arbotek's interference caused damage to Beck. Moreover, Arbotek argues that Count Two also fails because it does not contain specific allegations concerning a causal relationship between Arbotek's conduct and the alleged damages. *See* Mot. to Dismiss, ECF No. 16. With respect to Count Three (intentional misrepresentation), Arbotek argues that Beck's Amended Complaint fails to state with the requisite particularity elements of a fraud claim under Federal Rule of Civil Procedure 9(b).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state

a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (Gregory, J., concurring) (citation omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (citation omitted).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Simmons v. United Mort. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 663; *see also A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.* at 664; *see also Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011).

## ANALYSIS

As noted, when ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts *and reasonable inferences derived therefrom* in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (citation omitted) (emphasis added). In light of this standard, this Court concludes that Beck has indeed met his burden of alleging plausible facts that, if true, would support a claim for relief against Arbotek.

## I. COUNT TWO—TORTIOUS INTERFERENCE WITH CONTRACT

Under Maryland law, in order to state a claim for tortious interference with business relations, a plaintiff must allege: "(1) intentional or willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants; and (4) actual damage and loss resulting." *S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F. Supp. 2d 850-51 (D. Md. 2005) (citations omitted). "[T]he two general types of tort actions for interference with business relationships are inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract." *Natural Design, Inc. v. Rouse Co.*, 485 A.2d 663, 674 (Md. 1984). As the Court of Appeals of Maryland has explained:

> The principle underlying both forms of the tort is the same: under certain circumstances, a party is liable if he interferes with and damages another in his business or occupation. The two types of actions differ in the limits on the right to interfere with which will be recognized in either case. *Thus, where a contract between the two parties exists, the circumstances in which a third party has a right to interfere with the performance of that contract are more narrowly restricted.* A broader right to interfere with economic relations exists where no contract or a contract terminable at will is involved.

*Id.* (citation omitted) (emphasis added). Here, a contract between Beck, Peiffer, and Sullivan exists, and Beck contends that Arbotek tortuously interfered with that contract and induced Peiffer and Sullivan to breach it. Beck alleges that, after being informed that Defendant Peiffer was investigating a possible merger between Avtek and Arbotek, Beck specifically told Arbotek that such an arrangement would violate the Stock Purchase Agreement and sent a copy of that agreement to Arbotek. *Id.* ¶ 31. Thereafter, "Arbotek responded to Plaintiff that although it disagreed, it would refrain from entering into any such relationship with Avtek." *Id.* Notwithstanding this assurance, Arbotek *did* enter into a joint venture with Avtek.

In Paragraph thirty-three of the Amended Complaint, Beck alleges that:

> Arbotek wrongfully and intentionally induced Defendants Peiffer and Sullivan to breach the Stock Purchase Agreement by entering into a joint venture with Arbotek called ReSpin Sales, whereby customers of Avtek would be diverted to ReSpin Sales. Upon information and belief, this inducement included accommodations to allow Defendants Peiffer and Sullivan to redirect revenue that should have been coming to Avtek (and thus to Plaintiff through the Avtek Holding Account) into other accounts so as to avoid making payments to Plaintiff.

FAC ¶ 33. Beck alleges numerous ways in which he was damaged as a result of Arbotek's actions. *See id.* ¶ 34. In short, with respect to Beck's tortious interference with contract allegation, he has stated factual allegations that "raise a right to relief above the speculative

level." *Twombly*, 550 U.S. at 555. Accordingly, Arbotek's motion to dismiss is denied with respect to Count Two.

**II. COUNT THREE—INTENTIONAL MISREPRESENTATION**

To succeed on his intentional misrepresentation claim asserted in Count Three of the Amended Complaint, the Plaintiff must satisfy the heightened pleading standard for fraud claims under Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that "a party must state with particularity the circumstances constituting the fraud or mistake." These circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). A failure to comply with this rule is treated as a failure to state a claim under Rule 12(b)(6). *See id.* at 783 n.5.

To recover for a claim of fraud or intentional misrepresentation under Maryland law, a plaintiff must show: "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Nails v. S & R, Inc.*, 639 A.2d 660, 668 (Md. 1994). With respect to the knowledge or scienter elements of the cause of action, the United States Court of Appeals for the Fourth Circuit has noted that "Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of the defendant's intent to deceive." *Harrison*, 176 F.3d

at 784 (citing 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1297 (2d ed. 1990)).[1]

In his Amended Complaint, Beck claims that during a teleconference that took place at 6:03 PM EST on June 21, 2011, Arbotek representatives specifically told Beck that Arbotek would not "work with Defendant Peiffer or Avtek on the ReSpin Sales deal or anything else." FAC ¶ 37. Beck contends that that assurance was false insofar as "Defendants had already entered into the ReSpin Sales transaction or a similar transaction involving Defendant Peiffer and/or Avtek," or, "[i]n the alternative, at the time Defendant Arbotek made those statements Defendant Arbotek knew that such a transaction would be pursued." *Id.* ¶ 38.

Abotek argues that these claims are conclusory and not specific enough under Rule 9(b)'s heightened pleading standard. However, taking the alleged facts in the light most favorable to the Plaintiff, it is a plausible and specific allegation that at the time Arbotek's representatives made their statements to Beck, they knew the statements were false or, at the very least, made those statements knowing they would not be honored. As the Fourth Circuit has noted, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784. In light of the applicable pleading standards, Beck has stated a plausible claim in Count Three. Accordingly,

---

[1] The relevant discussion in WRIGHT & MILLER now appears in the third edition of Volume 5A, published in 2004.

Arbotek's motion to dismiss is denied with respect to Count Three of the Amended Complaint.

## CONCLUSION

For the reasons stated above, Defendant Arbotek Associates, Inc.'s Motion to Dismiss First Amended Complaint (ECF No. 16) is DENIED.

A separate Order follows.

Dated: July 6, 2012

/s/

Richard D. Bennett
United States District Judge